| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| ALICIA ARREDONDO, individually and acting in the interest of other current and former employees,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWESTERN & PACIFIC SPECIALTY FINANCE, INC., CHECK 'N GO OF CALIFORNIA, INC., and DOES 1 through 20, inclusive,<br><br>Defendants. | No. 1:18-cv-01737-DAD-SKO<br><br>ORDER RE: PLAINTIFF'S MOTION TO COMPEL<br><br>(Doc. 28) |

This matter is before the Court on Plaintiff Alicia Arredondo's "Motion to Compel Further Responses and Documents/Data to Plaintiff's Request for Production of Documents/Data and Interrogatories, Set One," filed October 14, 2019 ( "Motion to Compel"). (Doc. 28.) Plaintiff and Defendant Southwestern & Pacific Specialty Finance, Inc. ("Defendant" or "Southwestern") filed their "Joint Statement" directed to the Motion to Compel, as required by this Court's Local Rule 251, on October 30, 2019. (Doc. 31.) The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for November 6, 2019, was therefore vacated. (Doc. 33.)

1

Having considered the parties' briefing, and for the reasons set forth below, the Motion to Compel will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Alicia Arredondo brings this putative class action against Southwestern alleging claims for violations of California's Labor Code and Unfair Competition Laws and a claim under California's Private Attorney General Act ("PAGA").[1] (Doc. 15.) The action proceeds on Plaintiff's first amended complaint ("FAC"), which alleges as follows:

Southwestern owns and operates "Check-N-Go" stores, which offer payday loans, installment loans, check cashing services, money orders, and other financial services to the public. (FAC ¶ 10.) It has at least thirty (30) stores within the State of California. (*Id*. ¶ 7.) Plaintiff worked as a Store Manager at several Check-N-Go stores in Modesto, Stockton, and Tracy. (*Id*. ¶¶ 6, 12.) Plaintiff claims that Southwestern violated overtime, meal, and rest period laws, and failed properly to report wage statements and to maintain payroll records. (*Id*. ¶¶ 31–34.) She further alleges that Southwestern required her to perform work "off-the-clock" before and after her shifts in order to open and close the stores. (*Id*. ¶ 15.) Plaintiff asserts that Southwestern's conduct constituted a "uniform policy and systematic scheme of wage abuse against [defendant's] hourly-paid or non-exempt employees within the State of California." (*Id*. ¶ 21.). Plaintiff seeks to assert claims as a representative PAGA on behalf of a proposed class defined as:

> All persons who are or have been employed by Defendants as non-exempt, hourly employees within the State of California within four years prior to the filing of the original Complaint to the final disposition of this case.

(FAC ¶ 37.)

Plaintiff moves to compel Southwestern to produce discovery related to members of the proposed class. (Docs. 28, 31.) Specifically, Plaintiff seeks to compel Southwestern to provide

---

[1] In both the original complaint and the first amended complaint, Plaintiff names "Check 'N Go of California, Inc." as a defendant. (*See* Doc. 1, Ex. 1; Doc. 15.) In its answer, Southwestern states that is "erroneously sued as Check 'N Go of California, Inc." and that "[a]t all times relevant to the allegations in the [c]omplaint, Southwestern [] has been Plaintiff's employer. Check 'N Go of California, Inc. has never employed Plaintiff of any California employee at any time relevant to the allegations in the complaint." (Doc. 17 at 1 & n.1.)

2

the full name, address, telephone numbers, e-mail addresses, and fax numbers for putative class members (Interrogatory No. 1), and to produce arbitration agreements, timekeeping and computer systems data, payroll data, and itemized wage statements for the putative class members (Request for Production of Documents Nos. 1, 4, 5, 6, 8, 9, 10, 11, 13, 14, 16, 20, & 22, 52, 53, 54, & 56). (*Id.*) Southwestern asserts the discovery requests are "vague, ambiguous, overbroad, seek information protected by individual employees' rights to privacy, are not proportional to the needs of the case, and in some instances are simply irrelevant." (Doc. 31 at 24.) According to Southwestern, the requests also seek "information on a class-wide basis specific to damages" and therefore go beyond the scope of class certification discovery permitted by the Court. (*Id.*)

## II. LEGAL STANDARDS

### A. Discovery Generally

Federal Rule of Civil Procedure 26(b)(1) provides that parties:

> May obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (citations omitted).

### B. Discovery in the Class Action Context

As for discovery in the class certification context, "[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975). *See also Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). The Ninth Circuit states that the "advisable practice" for district courts on pre-certification

3

discovery, "is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *see also Artis*, 276 F.R.D. at 351. Ninth Circuit case law therefore "stand[s] for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery may be warranted." *Vinole*, 571 F.3d at 942. A court does not abuse its discretion in refusing to authorize pre-certification discovery when the plaintiff fails to advance a prima facie showing that the class requirements [*i.e.*, numerosity, commonality, typicality and adequacy of representation] of Rule 23 are satisfied or that "discovery is likely to produce substantiation of class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). A court is not required, however, to find a prima facie showing under Rule 23 prior to authorizing pre-certification discovery. *See Kaminske v. JP Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) ("[T]here is nothing in *Doninger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing. However, it is clear that a court has discretion to decide whether to require the prima facie showing that was approved in *Doninger* and *Mantolete*."); *Robinson v. The Chefs' Warehouse*, Case No. 3:15-cv-05421-RS(KAW), 2017 WL 836943, at *2 (N.D. Cal. Mar. 3, 2017) ("Plaintiffs are not necessarily required to make a prima facie showing in order to obtain information for the putative class.").

Finally, "[t]he Supreme Court has recognized the importance of permitting class counsel to communicate with potential class members for the purpose of gathering information, even prior to class certification." *Guzman v. Chipotle Mexican Grill, Inc.*, Case No. 17-cv-02606-HSG (KAW), 2018 WL 6092730, at *2 (N.D. Cal. Nov. 21, 2018) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102-03 (1981). *See also Vinole*, 571 F.3d at 942; *Doninger*, 564 F.2d at 1313. Concerning the contact information of the putative class members, district courts in this Circuit have often found that "[a]s a general rule, before class certification has taken place, all

4

parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wiegele v. FedEx Ground Package Sys*., No. 06-CV-01330-JM(POR), 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007) (quoting *Koo v. Rubio's Restaurants, Inc*., 109 Cal.App.4th 719, 729 (2003)). For that reason, discovery of the putative class members' contact information is routinely allowed. *See, e.g., Artis*, 276 F.R.D. at 352 ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."); *Putman v. Eli Lilly & Co*., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) ("[I]t seems to the Court that contact with [class members] could well be useful to the plaintiff to determine, at minimum, the commonality and typically prongs of Rule 23.").

### III. DISCUSSION

**A. Putative Class Member Identities and Contact Information (Interrogatory No. 1)**

Interrogatory No. 1 seeks the full name, address, telephone numbers, e-mail addresses, and fax numbers for putative class members. (Doc. 31 at 6–7.) The parties have met and conferred to narrow the scope of their disagreement with respect to disclosure of putative class member names and contact information. Plaintiff has agreed to utilize a *Belaire-West* opt-out notice procedure for class members who wish to opt-out of disclosure of their information.[2] (Doc. 31 at 6.) The parties disagree, however, over whether a *Belaire-West* notice should be sent to all putative class members or only a sample. Southwestern contends that a 15 percent sampling is sufficient where, as here, a "vast majority of putative class members" executed arbitration agreements and therefore will be excluded from participating in the litigation. (*Id*. at 25.) Southwestern further asserts that Plaintiff should bear the cost of sending the notices. (*Id*.) Plaintiff contends that she is entitled to names and contact information for all punitive class

---

[2] Such procedure comes from *Belaire–West Landscape Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007). In that case, the court acknowledged that "[t]he contact information for . . . current and former employees deserves privacy protection." *Id*. at 561. In order to protect employee privacy, the court adopted an opt-out procedure, whereby employees would receive notice of the putative class action and the fact that plaintiffs were seeking their personal contact information. *Id*. at 562. Employees could send written notice that they do not want their contact information shared with the plaintiffs' attorneys. Federal courts have adopted the *Belaire-West* opt-out notice procedure in employment class actions. *See Nguyen v. Baxter Healthcare Corp*., 275 F.R.D. 503, 512 (C.D. Cal. 2011); *Murphy v. Target Corp*., No. 09cv1436–AJB (WMc), 2011 WL 2413439, at *4 (S.D. Cal. Jun. 14, 2011).

5

members and that the cost of sending the notices should be borne by Southwestern. (*Id*. at 17–18.)

As an initial matter, the Court finds that the information requested by Interrogatory No. 1. concerning the identity and contact information of the putative class members—even those who may have signed an arbitration agreement—is sufficiently relevant to be subject to discovery. *See Urena v. Cent. California Almond Growers Assn*., Case No. 1:18-cv-00517-LJO-EPG, 2019 WL 2390042, at *6 (E.D. Cal. June 6, 2019). *See also Sansone v. Charter Commc'ns, Inc.*, Case No. 17-cv-01880-WQH-JLB, 2019 WL 460728, at *8–9 (S.D. Cal. Feb. 6, 2019) (finding contact information of putative class members that had signed arbitration agreement relevant because "[b]y communicating with putative class members, Plaintiffs will be able to gather information related to the enforceability of the arbitration agreement, which may be an issue during the certification stage") (citing *Adamov v. Pricewaterhouse Coopers LLP*, No. 2:13–cv–01222–TLN–AC, 2017 WL 6558133 at *4 (E.D. Cal. Dec. 22, 2017)). This holding comports with the general rule that before class certification has taken place, parties are entitled to equal access to persons who potentially have an interest in the subject of the action, but who are not yet parties.[3] *See Wiegele*, 2007 WL 628041, at *2 (internal citations omitted); *see also Gulf Oil Co*., 452 U.S. at 101-02.

Southwestern does not cite any legal authority to the contrary. Instead, it appears to contend that because Plaintiff will not be able to represent adequately under Rule 23 those putative class members who have signed arbitration agreements, she is not entitled to the contact information for each putative class member.[4] (*See* Doc. 31 at 25.) Such contention is unavailing. Without deciding the issue, the Court notes that a prima facie showing that class certification is appropriate under Rule 23 is not necessarily required before authorizing pre-

---

[3] That Plaintiff brings a PAGA cause of action in addition to seeking class certification under Rule 23 does not, however, provide the Court a basis for ordering the production of putative class member name and contact information. As Plaintiff correctly points out, a cause of action brought under PAGA does not require class certification. (Doc. 31 at 18.) The Court's Scheduling Order bifurcated merits from class discovery and set a deadline for class discovery only. (*See* Docs. 11, 30.) Any discovery that Plaintiff would seek to conduct relating to her PAGA claim would therefore fall outside the scope of the Scheduling Order.

[4] The Court has previously found that Plaintiff had validly opted-out of the applicable arbitration agreement with Southwestern. (*See* Doc. 25.)

6

certification discovery. *See Kaminske*, 2010 WL 5782995 at *2; *Robinson,* 2017 WL 836943, at *2. As the propriety of class certification is yet to be determined in this case, the Court declines to limit pre-certification discovery based on Southwestern's assertion, unsubstantiated by evidence at this stage, that a "vast majority of putative class members" are subject to individual arbitration and will be excluded from action.[5] *See Brum v. MarketSource, Inc*., No. 2:17-CV-241-JAM-EFB, 2018 WL 3861558, at *3 (E.D. Cal. Aug. 14, 2018) ("The issue of whether an individual who signed an arbitration agreement should be excluded from the class will need to be addressed on a motion for class certification, not a discovery motion. Accordingly, plaintiffs should be permitted to discover information regarding all class members, including those that signed an arbitration agreement.").

With respect to Southwestern's request to limit production of the information requested by Interrogatory No. 1 to a sample of the putative class members, the Court is not persuaded that a sampling is appropriate in this case. Here, the putative class—approximately 1,133 employees—is relatively small, particularly when compared to the class size in *Harris v. Best Buy Stores, L.P*., cited by Southwestern (*see* Doc. 31 at 25).[6] *See Harris*, Case No. 4:17-cv-00446-HSG(KAW), 2017 WL 3948397, at *3-4 (N.D. Cal. Sept. 8, 2017) ("Given the large size of the putative class [10,000], the Court finds that the 500 employees previously offered by Defendant is appropriate."). Indeed, Courts routinely order samples that outnumber the size of the putative class in this matter. *See, e.g., Guzman*, 2018 WL 6092730, at *3 ("Given the large size of the putative class [43,000], the Court finds that a sample of 2,000 individuals is appropriate.").

Southwestern does not contend that providing the name and contact information for all putative class members would be unreasonably burdensome. Moreover, any privacy concerns

---

[5] The undersigned Magistrate Judge is also guided by their own limited role in this case. District Judge Dale A. Drozd is the presiding judge in this case. Absent consent (which has not been given), the District Judge, not the Magistrate Judge, will be the one to decide class certification. The undersigned is therefore reluctant to limit discovery in any way that precludes Plaintiff from making arguments at class certification before the District Judge. *See Urena*, 2019 WL 2390042, at *6.

[6] According to Plaintiff, this number is derived from Southwestern's responses to interrogatories. (*See* Doc. 31 at 4.)

implicated in producing such information will be adequately addressed by the *Belaire-West* opt-out notice procedure, as agreed to by the parties. Accordingly, Southwestern shall be required to provide the information requested by Interrogatory No. 1 for approximately all 1,133 putative class members. *See, e.g.*, *Brum*, 2018 WL 3861558, at *6 (rejecting the defendant's proposal that it produce contact information for 5 percent of approximately 7,400 putative class members for *Belaire-West* notice purposes and ordering production of that information for all members).

Finally, the Court finds that Plaintiff should pay the cost of the *Belaire-West* procedure, given the fact that the information sought by Interrogatory No. 1 would enable Plaintiff to contact putative class members by telephone.[7] *See, e.g., Willner v. Manpower, Inc*., No. C 11-2846 JST (MEJ), 2013 WL 12324002, at *2 (N.D. Cal. Mar. 27, 2013) (finding *Belaire-West* notice required "because of Plaintiff's desire to use the list to contact putative class members by telephone as part of their investigation" and ordering Plaintiff to bear cost). Plaintiff cites no legal authority holding that a defendant should bear the cost of a *Belaire-West* notice under these circumstances. Moreover, Plaintiff "is in the best position to weigh the usefulness of the information she seeks versus the cost." *See id*.

**B.     Arbitration Agreements (Request for Production No. 1)**

Plaintiff also seeks an order compelling Southwestern to produce all arbitration agreements signed by any putative class member. (Doc. 31 at 20.) Plaintiff contends that because Southwestern has raised the existence of arbitration agreements between it and putative class members, any arbitration agreements between Southwestern and any putative class members are relevant to this affirmative defense. (*Id*. at 23.) Plaintiff relies on *Adamov v. Pricewaterhouse Coopers LLP*, 2017 WL 6558133, in support of its position. (*See id*.)

---

[7] Plaintiff contends that, notwithstanding her agreement, a *Belaire-West* opt-out notice procedure is not necessary in this case. (Doc. 31 at 16.) Absent a protective order, which has not yet been entered in this case, the Court disagrees. *Cf. Austin v. Foodliner, Inc*., Case No. 16-cv-07185-HSG (DMR), 2018 WL 1168694, at *2 (N.D. Cal. Mar. 6, 2018) (refusing to require a *Belaire-West* notice where "pre-certification discovery of putative class members' confidential [contact] information subject to a protective order); *Salgado v. O'Lakes*, No. 1:13–CV–0798–LJO–SMS, 2014 WL 7272784, at *12–13 (E.D. Cal. Dec. 18, 2014) (finding a standing protective order is "sufficient to protect the limited disclosure of [class members' contact] information and a *Belaire* opt-out protocol is unnecessary."); *Marsikian v. Mercedes-Benz USA, LLC*, No. CV 08-4876 AHM (FMOx), 2009 WL 10673466, at *2 (C.D. Cal. Aug. 13, 2009) ("Although the court is persuaded that a protective order is sufficient to protect the class members' state law third-party privacy rights (i.e., an opt-out letter or notice is not required), the court will not revisit the parties' compromise agreement.") (internal citation omitted).

In response, Southwestern objects to the production of the individual arbitration agreements on privacy grounds and that the request is premature in the absence of a certified class. It further asserts that Plaintiff's reliance on *Adamov* is misplaced because "the court in *Adamov* did not order production of the actual signed arbitration agreements." (Doc. 31 at 26.) Southwestern, however, states that it has already produced the "form of arbitration agreements during the relevant period" and, in an effort to compromise, it will provide Plaintiff with information regarding "how many putative class members have arbitration agreements" and "how each arbitration agreement was presented[] and signed." (Doc. 31 at 27.)

Contrary to Southwestern's suggestion, the *Adamov* court did not refuse to order the production of individual arbitration agreements. In fact, that issue was not before it. Instead, *Adamov* concerned the discoverability of information concerning the employer's "arbitration program." 2017 WL 6558133, at *3. The plaintiff asserted that he was entitled to information in addition to the form arbitration agreement, including information concerning employees who had agreed or declined to participate in the arbitration program, information concerning employees who were subject to the arbitration program, and communications between the employer and employees about the arbitration program. *Id*. The *Adamov* court agreed, finding that the plaintiff was entitled to discovery at the precertification stage on issues surrounding the arbitration program. *Id*. In its reasoning, the *Adamov* court noted that preventing this discovery "would amount to a premature decision on the issue of the arbitration agreement's applicability, by limiting plaintiff's ability to include potentially-bound individuals in the class." *Id*. at *4.

The Court agrees with the reasoning articulated in *Adamov* and finds that Plaintiff is entitled to information concerning putative class members who are allegedly subject to arbitration agreements. By communicating with putative class members, Plaintiff will be able to gather information related to the enforceability of the arbitration agreements, which may be at issue during the class certification stage before the District Judge. *See Sansone,* 2019 WL 460728, at *9; *Adamov*, 2017 WL 6558133, at *4.

The undersigned is not convinced, however, that the production of every arbitration agreement signed by each putative class member is "proportional to the needs of the case." See

Fed. R. Civ. P. 26(b)(1). Southwestern represents that it has already produced the "form of arbitration agreements during the relevant period" and has agreed to provide Plaintiff with information regarding "how many putative class members have arbitration agreements" and "how each arbitration agreement was presented[] and signed." Southwestern shall also provide the identities of those putative class members who are allegedly bound by an arbitration agreement with Southwestern, as determined above. Beyond that, Plaintiff has not met her burden of showing the individual arbitration agreements are discoverable under Rule 26(b)(1). She cites no legal authority in which such arbitration agreements were ordered to be produced, and district courts in the Ninth Circuit that have confronted the issue have found to the contrary. *See, e.g., Murray v. DirecTV, Inc.*, SACV 13-0522 AG (ANx), 2013 WL 12139369, at *3 (C.D. Cal. Dec. 16, 2013) (concluding that the burden of producing arbitration agreements for all putative class members was outweighed by its likely benefit under Rule 26(b)); *Laguna v. Coverall N. Am., Inc.*, Civil No. 09cv2131–JM (BGS), 2011 WL 3176469, at *8 (S.D. Cal. July 26, 2011) (finding "no basis" to require Defendants to produce written arbitration agreements for putative class members prior to certification of a class and denying motion to compel). Plaintiff's motion to compel production of the individual arbitration agreements sought by Request for Production No. 1 shall therefore be denied, but without prejudice to a later determination by the Court that production of the individual arbitration agreements is warranted.

Finally, the undersigned finds that any privacy concerns implicated in producing the identity of putative class members who are allegedly subject to an arbitration agreement with Southwestern (*see* Doc. 31 at 26) can be adequately addressed through the *Belaire-West* opt-out procedure, discussed above.

**C.  Timekeeping, Payroll Data, and Wage Statements (Requests for Production Nos. 4, 5, 6, 8, 9, 10, 11, 13, 14, 16, 20, & 22)**

Plaintiff seeks production of time records and data, work schedules, payroll records and compensation information, and wage statements for all members of the putative class. Plaintiff alleges that this information" could indicate whether employees were at work under the control of [Southwestern] or taking a meal period" and that they "have the ability to demonstrate

10

whether putative class members were paid for all hours worked or whether they received premium payments for breaks that were not authorized or permitted." (Doc. 31 at 20.) According to Plaintiff, these documents will be utilized to show that she meets the requirements for numerosity, commonality, typicality, and predominance under Rule 23. (Doc. 31 at 20–21.) Southwestern objects that the requests "have no bearing on class certification" and instead "go directly to damages." (Doc. 31 at 27–28.) Southwestern further objects that the discovery requests "violate third-party privacy rights and confidentiality" of the putative class members and that Plaintiff is not entitled to the information because she has not made a "prima facie showing of company-wide (or class-wide) violations." (*Id*. at 28.)

While Southwestern is correct that some district courts have required a plaintiff to make a prima facia showing of company-wide violations, they have done so in the context of considering whether to permit discovery related to locations where the plaintiff never worked. *See Nguyen,* 275 F.R.D. at 508 ("Because Plaintiff has failed to produce any evidence of company-wide violations, and Defendant admittedly has produced contrary evidence showing company-wide policies consistent with California law, there is no basis at this time to require discovery *beyond the Irvine facility where Plaintiff worked*.") (emphasis added); *Coleman v. Jenny Craig, Inc*., Civil No. 11–cv–1301–MMA (DHB), 2013 WL 2896884, at * 8 (S.D. Cal. June 12, 2013) (limiting discovery to locations where plaintiff worked based on plaintiff's failure to provide evidence of companywide violations); *Martinet v. Spherion Atl. Enters., LLC*., Civil No. 07cv2178 W(AJB), 2008 WL 2557490 (S.D. Cal. June 20, 2008) (limiting discovery to offices where plaintiff worked until plaintiff provided evidence of companywide violations). Here, however, Southwestern does not propose limiting discovery of payroll, timekeeping, and wage information to only those putative class members who worked at Check-N-Go locations where Plaintiff worked. Instead, it resists discovery of this information for <u>all</u> putative class members, on the grounds that Plaintiff has not shown class certification is appropriate under Rule 23. (*See* Doc. 31 at 28.) As observed above, however, there is no requirement that that a prima facie showing be made prior to seeking classwide discovery. *See Robinson*, 2017 WL 836943, at *2; *Kaminske*, 2010 WL 5782995, at *2.

The undersigned finds that the more appropriate course is to permit the requested class discovery. Plaintiff has shown that Requests for Production Nos. 4, 5, 6, 8, 9, 10, 11, 13, 14, 16, 20, & 22 all seek information "likely to produce substantiation of class allegations." *Mantolete*, 767 F.2d at 1424. In particular, these requests seek timekeeping, payroll, and wage information relevant to numerosity, commonality, and typicality, which Plaintiff must establish to certify the proposed class. *See Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 590 (E.D. Cal. 2015) (finding information regarding when employees worked and itemized wage statements that provide details regarding employees' earnings is "relevant for class certification purposes, as it will provide Plaintiffs with insight as to the cause and scope of any violations"); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007) (finding wage, time, and break records would "certainly" assist in showing numerosity and commonality in case for unpaid overtime and meal and rest break wages). Furthermore, Southwestern is the party in possession and control of the requested information, and absent an order compelling it to produce the requested discovery, Plaintiff will not be able to obtain evidence necessary for a class certification motion.

Accordingly, the Court finds that Plaintiff is entitled to the information called for by Requests for Production Nos. 4, 6, 8, 9, 10, 11, 13, 14, 16, 20, & 22.[8] In order to address privacy concerns of the putative class, Southwestern's production of this information shall also be subject to the *Belaire-West* opt-out procedure. *See Aldapa*, 310 F.R.D. at 592.

**D.      Computer Systems Data (Requests for Production Nos. 52, 53, 54, & 56)**

Finally, Plaintiff seeks discovery of what the Court terms "computer systems data": information showing at what time the security alarms at Southwestern's locations were activated and deactivated (Request for Production No. 53), and information showing the time of each transaction logged into Southwestern's (1) "Stars Daily Transaction Journal" (Request for Production No. 52), (2) "Chexar computer-based system to cash checks" (Request for Production

---

[8] Plaintiff also seeks discovery of any "Entity Relationship Diagram" relating to Southwestern's timekeeping systems, which Plaintiff contends is a "structural diagram detailing the relationship between various fields and tables within a timekeeping database" (Request for Production No. 5). (Doc. 31 at 23–24.) After meeting and conferring with Plaintiff, Southwest represents that it has "searched its records and is not aware of any responsive documents in its possession, custody, or control" and will supplement its response to Request for Production No. 5 accordingly. In view of this representation, Plaintiff's motion to compel production of documents responsive to that Request shall therefore be denied as moot.

12

No. 54), and (3) "Western Union transaction journal" (Request for Production No. 56). About these requests Plaintiff makes the same argument: the information is relevant because it "could indicate" when employees were at work under the control of Southwestern. (Doc. 31 at 20.) As to the security alarm information, Plaintiff further explains that it is "particularly relevant given that [she] alleges that she performed work tasks prior to clocking in for which she was not paid, such as opening the location and deactivating the alarm code." (*Id*.)

The Court finds that Plaintiff has adequately demonstrated the relevance of security alarm information for class certification. Instances of unpaid time worked by class members prior to clocking in and following clock would, for example, help substantiate Plaintiff's contention that the class is numerous, as well as would bear on the issues of typicality and the predominance of Southwestern's alleged failure to compensate for time spent opening and closing the store locations while "off the clock." *See Aldapa*, 310 F.R.D. at 590; *Hill*, 242 F.R.D. at 562. Southwestern shall therefore produce information responsive to Request for Production No. 53.

However, Plaintiff has not shown how information showing the time of each transaction logged in the Stars Daily Transaction Journal, the Chexar computer-based system, and the Western Union transaction journal is likely to substantiate her class allegations. Plaintiff has not set forth any facts or evidence describing these computer systems, such as what information they record, how they are accessed, for what purpose they are used, etc. Without adequate information regarding these computer systems, the Court cannot find that Plaintiff has met her burden under Rule 26(b) and therefore cannot compel Southwestern to respond to Requests for Production Nos. 52, 54, & 56 during the period set for class certification discovery. (*See* Docs. 11, 30 (bifurcating merits from class discovery).) Accordingly, Plaintiff's motion to compel shall be denied as to those Requests.

**CONCLUSION**

Based on the foregoing, it is HEREBY ORDERED that Plaintiff's Motion to Compel (Doc. 28) is GRANTED IN PART and DENIED IN PART, as follows:

1. Plaintiff's Motion to Compel further response to Interrogatory No. 1 is GRANTED. Southwestern shall produce information responsive to Interrogatory No. 1 for all putative

|   |   |   |
|---|---|---|
| 1 |   | class members.  A *Belaire-West* opt-out notice shall be sent to affected individuals before |
| 2 |   | any information is disclosed, the cost of which shall be borne by Plaintiff; |
| 3 | 2. | Plaintiff's Motion to Compel further response to Request for Production No. 1 is GRANTED IN PART.  Southwestern shall produce identifying information for all putative class members who are allegedly bound by an arbitration agreement with Southwestern.  A *Belaire-West* opt-out notice shall be sent to affected individuals before any information is disclosed, the cost of which shall be borne by Plaintiff.  Plaintiff's Motion to Compel the individual arbitration agreements of putative class members sought by Request for Production No. 1 is DENIED; |
| 10 | 3. | Plaintiff's Motion to Compel further responses to Request for Production Nos. 4, 6, 8, 9, 10, 11, 13, 14, 16, 20, & 22 is GRANTED.  Southwestern shall produce information responsive to these Requests.  A *Belaire-West* opt-out notice shall be sent to affected individuals before any information is disclosed, the cost of which shall be borne by Plaintiff; |
| 15 | 4. | Plaintiff's Motion to Compel further response to Request for Production No. 5 is DENIED as MOOT.  Southwestern shall supplement its response to indicate it has no information to responsive to this Request within seven (7) days of entry of this Order; |
| 18 | 5. | Plaintiff's Motion to Compel further response to Request for Production No. 53 is GRANTED. Southwestern shall produce information responsive to this Request; and |
| 20 | 6. | Plaintiff's Motion to Compel further responses to Request for Production Nos. 52, 54, & 56 is DENIED. |

IT IS SO ORDERED.

Dated: __**November 18, 2019**__                    /s/ *Sheila K. Oberto*
                                                                            UNITED STATES MAGISTRATE JUDGE